Toporovsky v Toporovsky (2026 NY Slip Op 50028(U))

[*1]

Toporovsky v Toporovsky

2026 NY Slip Op 50028(U)

Decided on January 12, 2026

Supreme Court, Bronx County

Gomez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 12, 2026
Supreme Court, Bronx County

Juana Toporovsky, Plaintiff(s),

againstArie Toporovsky, ASHER TOPOROVSKY, ESTHER TOPOROVSKY, ARTHUR COURT REALTY MGT. CORP, ARIE TOPOROVSKY, ASHER TOPOROVSKY, AND ESTHER TOPOROVSKY AS EXECUTORS OF THE ESTATE OF RINALDO TOPOROVSKY, VAN COURTLANDT ASSETSLLC AND JOHN GOJCAJ, Defendant(s).

Index No. 817070/25E

Counsel for plaintiff: Cuddy & Feder LLPCounsel for defendants: Meister Seelig & Fein PLLC

Fidel E. Gomez, J.

In this action for, inter alia, declaratory judgment, defendants ARIE TOPOROVSKY (Arie), ASHER TOPOROVSKY (Asther), ESTHER TOPOROVSKY (Esther) ARTHUR COURT REALTY MGT. CORP (Arthur), ARIE TOPOROVSKY, ASHER TOPOROVSKY, and ESTHER TOPOROVSKY AS Executors OF THE ESTATE OF RINALDO TOPOROVSKY (ERT), and VAN COURTLANDT ASSETS LLC (Van Courtland) move seeking an order pursuant to CPLR § 6514 cancelling the notice of pendency filed by plaintiff in this action. The foregoing defendants aver that insofar as plaintiff only owns an interest in Van Courtland, which owns the property encumbered by the notice of pendency, the notice of pendency was improperly filed and should be cancelled. The instant motion is unopposed [FN1]
. 
For the reasons that follow hereinafter, moving defendants' motion is denied, on default and without opposition.
The instant action is for equitable accounting, declaratory judgment, and permanent injunction. The amended complaint, filed on December 2, 2025, alleges that in 1999, Van Courtland was formed for the purposes of, inter alia, acquiring and owning real property located at 155-165 Mosholu Parkway North and 171 East Mosholu Parkway North, Bronx, NY (the properties). Initially, Van Courtland's members were nonparty O.T. Company L.P. (OT), its general partner Arthur, and nonparty 2863 Morris Avenue LLC (2863). Plaintiff and her brother, deceased nonparty Rinaldo Toporovsky (Rinaldo) were the beneficial owners of Van Courtland's original members and plaintiff provided the hard money funding to purchase OT and 2863's [*2]assets. In 2007, plaintiff, Arthur and Rinaldo acquired all interest in Van Courtland and, at the time, plaintiff owned 30% of the membership interest in Van Courtland, Rinaldo owned 62.5% of the membership interest in Van Courtland, and Arthur owned 7.5% of the membership interest in Van Courtland. As of 2022, per Van Courtland's tax returns, Rinaldo owned 69% of the membership interest in Van Courtland, Esther owned 1% and Arthur no longer owned any membership interest in Van Courtland. In 2025, Rinaldo passed away and his estate now owns 69% of the membership interest in Van Courtland. Since Rinaldo's passing, Arie and Asher, Rinaldo's children and plaintiff's nephews, have been acting as Van Courtland's managers, and they also control Arthur. Esther, Rinaldo's wife, and Arie and Asher's mother, and Arie and Asher are the executors of ERT. Pursuant to Van Courtland's Operating Agreement (1) transfers of a member's membership interest in Van Courtland to anyone other than a member's immediate family is prohibited unless other members are offered an opportunity to purchase the same; (2) Van Courtland's manager is required to prepare and distribute an operational budget to all members and must also prepare and distribute a balance sheet and a statement of profit/loss for Van Courtland; and (3) pursuant to Section 6, requires, inter alia, that if the properties are to be sold, members holding the majority of Van Courtland's shares must notify all other members of the intent to sell the properties in writing, and if all members cannot agree on a sale price, requires the retention of an appraiser, and upon determination of the value of the properties, any member other than those desiring to sell the properties must be given an opportunity to purchase the properties. In recent years, plaintiff has been denied access to information regarding Van Courtland the properties have been neglected and, Van Courtland has been the subject of at least one federal law suit, wherein a contractor sued it for $850,000. In 2017, Van Courtland obtained a loan for $9.8 million and, per a mortgage, pledged the properties as collateral. A portion of the foregoing loan was used to pay a then existing mortgage and thereafter, Van Courtland was left with $4.2 million. Although plaintiff received $600,000 from the foregoing sum, this amount represented less than her proportionate share. Rinaldo, Arie, and Asher have never accounted for how the rest of the remaining funds, totaling $2 million, were used. In 2024, despite having at least $1 million in cash, Rinaldo, Asher, and Arie ceased making payments on the aforementioned loan. In 2024, Rinaldo, Asher, and Arie began to take steps to sell the properties. They contacted brokers, and appraisals of the properties valued them at between $10-14 million. On July 2025, Arie, on behalf of Van Courtland, executed a contract to sell the properties to defendant JOHN GOJCAJ (Gojcaj) for $8.5 million, with a closing date 90 days therefrom. Plaintiff was never apprised of the intent to sell the properties in writing, as required by the Operating Agreement, nor was she provided with any of the appraisals. The prime motivation for the foregoing sale is to discharge ERT's obligation as guarantor for Van Courtland's loan. Based on the foregoing, plaintiff interposes three causes of action. The first cause of action is for equitable accounting, wherein it is alleged that Rinaldo, Arthur, Asher, and Arie, as the Van Courtland's majority members, owe plaintiff a fiduciary duty and that because they control Van Courtland, they are required to equitably account for how Van Courtland's funds and resources have been used. The second cause of action is for declaratory judgment, wherein it is alleged that because, in executing the agreement to sell the properties to Gojcaj, Asher and Arie failed to, inter alia, notify plaintiff in writing when they decided to sell the properties, they violated the Operating Agreement, such that the Court should declare that the agreement to sell the properties is void. The last cause of action is for permanent injunction, wherein it is alleged in contracting to sell the properties to Gojcaj, Asher and Arie failed to comply with the Operating Agreement, such that they should be permanently enjoined from selling the properties to Gojcaj.Applicable LawPursuant CPLR § 6501, in an action where a judgment "would affect the title to, or the possession, use or enjoyment of, real property", "[a] notice of pendency may be filed." The notice of pendency provides "constructive notice, from the time of filing of the notice only, to a purchaser from, or incumbrancer against, any defendant named in a notice of pendency (id.). The purpose of such notice is to ensure that the property - the object of the law suit - is not alienated [*3]by a defendant during the pendency of the action (Israelson v Bradley, 308 NY 511, 516 [1955] ["The purpose of the grant of the privilege (conferred by a notice of pendency) was to prevent the acquisition pendente lite of an interest in the subject-matter of the suit, to the prejudice of the plaintiff because otherwise there would be no end of any suit; the justice of the court would be evaded, and great hardship and inconvenience to the suitor would be necessarily introduced" (internal quotations omitted).]; Hailey v Ano, 136 NY 569, 576 [1893] ["(A notice of pendency) prevented the acquisition pendente lite of an interest in the subject-matter of the suit, to the prejudice of the plaintiff, because otherwise (in words already quoted) there would be no end of any suit; the justice of the court would be evaded, and great hardship and inconvenience to the suitor would be necessarily introduced." (internal quotation marks omitted)]; Mechanics Exch. Sav. Bank v Chesterfield, 34 AD2d 111, 113 [3d Dept 1970] ["(A notice of pendency's) function is to carry out the public policy that a plaintiff's action shall not be defeated by an alienation of the property during the course of the lawsuit; otherwise, there would be no end of any suit, the justice of the court would be evaded and great difficulty would confront a suitor."]).
Pursuant to CPLR § 6514, a party may move for an order cancelling a notice of pendency. Generally, CPLR § 6514(a) mandates cancellation of a notice of pendency where the action has been resolved against plaintiff and plaintiff has no viable avenue to seek appellate review and/or stay enforcement of any judgment pending appeal (id. ["The court, upon motion of any person aggrieved and upon such notice as it may require, shall direct any county clerk to cancel a notice of pendency, if service of a summons has not been completed within the time limited by section 6512; or if the action has been settled, discontinued or abated; or if the time to appeal from a final judgment against the plaintiff has expired; or if enforcement of a final judgment against the plaintiff has not been stayed pursuant to section 5519."). By contrast, CPLR § 6514(b) promulgates circumstances where a court, in the exercise of its discretion, may cancel a notice of pendency, when subsequent to filing a notice of pendency, a plaintiff "has not commenced or prosecuted the action in good faith" (id.). If appropriate, the court, upon granting an application to cancel a notice of pendency, can direct that a plaintiff pay costs and expenses incurred by a defendant in any action in which a notice of pendency was filed (CPLR § 6514[c] ["The court, in an order cancelling a notice of pendency under this section, may direct the plaintiff to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action."]). Notably, the award of costs resulting from the cancellation of a notice of pendency is only available when cancellation is granted pursuant to CPLR § 6514 and not when cancellation is the result of the court's inherent power, such as when dismissal of an action requires, by operation of law, that such notice be cancelled (Congel v Malfitano, 61 AD3d 807, 809 [2d Dept 2009], affd as mod, 31 NY3d 272 [2018] ["However, the Supreme Court should not have awarded the plaintiffs costs and disbursements under CPLR 6514(c). CPLR 6514(c) authorizes an award of costs and disbursements if the cancellation of the notice of pendency is made pursuant to that section. Here, however, the Supreme Court invoked its 'inherent power,' and not CPLR 6514, to cancel the notice of pendency."]), or where such action did not fall within the ambit of CPLR § 6501, such that a notice of pendency was improper (Nastasi v Nastasi, 26 AD3d 32, 36 [2d Dept 2005]).
Lastly, pursuant to CPLR § 6515, except in any action to foreclose a mortgage, a notice of pendency may be cancelled if a defendant posts an undertaking in an amount fixed by the court and which the court finds will provide adequate relief to the plaintiff in the relevant action (CPLR § 6515 [1] ["In any action other than a foreclosure action as defined in subdivision (b) of section 6516 of this article or for partition or dower, the court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, upon such terms as are just, whether or not the judgment demanded would affect specific real property, if the moving party shall give an undertaking in an amount to be fixed by the court, and if . . . the court finds that adequate relief can be secured to the plaintiff by the giving of such an undertaking."]). Under the foregoing circumstances, the amount of the undertaking should be sufficient to make the plaintiff whole should he/she prevail in the action [*4](Mitchell Field Realty Corp. v United Artists Communications, Inc., 188 AD2d 451, 451 [2d Dept 1992] ["Moreover, the Supreme Court's cancellation of the notice of pendency upon the posting of an undertaking in the amount of $300,000 upon its express finding 'that adequate relief can be secured to the plaintiff by the giving of such an undertaking' (CPLR 6515 [1]) did not constitute an improvident exercise of discretion."]; John H. Dair Bldg. Const. Co. v Mayer, 31 AD2d 835, 835 [2d Dept 1969] ["Under such circumstances, we are of the opinion that the maximum amount which plaintiffs could recover by virtue of the Lis pendens, if successful in the action, would be the net proceeds realized upon a bona fide sale of the property. The undertaking under CPLR 6515 is a substitute for the property; and plaintiffs will be afforded adequate relief by an undertaking in the amount of such net proceeds" (internal citations omitted).]). Notably, in an action for specific performance, a valid notice of pendency should not be canceled merely because the defendant is willing to post an undertaking (Andesco, Inc. v Page, 137 AD2d 349, 357 [1st Dept 1988]). Instead, pursuant to CPLR § 6515(2), the cancellation is only appropriate if plaintiff gives an undertaking sufficient to "indemnify the moving party for the damages that he or she may incur if the notice is not cancelled" (id.; Andesco, Inc. at 357 ["Although the language of CPLR 6515 makes both subsections applicable to actions where 'the judgment demanded would affect specific real property' the preferred course in a claim for specific performance is the utilization of subdivision 2 by cancelling the notice of pendency upon an undertaking by the defendant seller unless plaintiff buyer posts an undertaking which will indemnify defendant. This 'double bonding' choice is preferable even when plaintiff's likelihood of success is doubtful" (internal citations omitted).]).
In reviewing an application seeking to cancel the notice of pendency on grounds that the action does not fall within the ambit of CPLR § 6501 and, thus, the notice of pendency is improper, the court's scope of review is circumscribed, limited to the face of pleadings, such that the court may not consider whether the action has merit (5303 Realty Corp. v O & Y Equity Corp., 64 NY2d 313, 320-321 [1984 ["Critically, the statutory scheme permits a party to effectively retard the alienability of real property without any prior judicial review. To the extent that a motion to cancel the notice of pendency is available, the court's scope of review is circumscribed. One of the important factors in this regard is that the likelihood of success on the merits is irrelevant to determining the validity of the notice of pendency . . . Thus, a court is not to investigate the underlying transaction in determining whether a complaint comes within the scope of CPLR 6501. Instead, in accordance with historical practice, the court's analysis is to be limited to the pleading's face" (internal citations omitted).]). Stated, differently, upon an application to cancel a notice of pendency, a court may not investigate beyond the face of the pleadings to determine if the merits of an action are sufficient to warrant a notice of pendency (5303 Realty Corp. at 321 ["The same considerations that require strict compliance with the procedural prerequisites also mandate a narrow interpretation in reviewing whether an action is one affecting the title to, or the possession, use or enjoyment of, real property. Thus, a court is not to investigate the underlying transaction in determining whether a complaint comes within the scope of CPLR 6501. Instead, in accordance with historical practice, the court's analysis is to be limited to the pleading's face (internal citations and quotation marks omitted).
Notably,
the property interests of a shareholder and the corporation are distinct. [Thus,] [t]he corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets [and] even complete ownership of capital stock does not operate to transfer the title to corporate property and ownership of capital stock is by no means identical with or equivalent to ownership of corporate property
(5303 Realty Corp. at 323; Brock v Poor, 216 NY 387, 401 [1915]). Accordingly, it is well settled that because in such an action, the judgment demanded would not affect the title to, or the possession, use or enjoyment of, real property, a notice of pendency is inappropriate were the [*5]object of the litigation is the plaintiff's actual or prospective property interest in the shares of the corporation, limited liability company or partnership (5303 Realty Corp. at 317 ["Specifically, we are asked to decide whether an action to enforce a contract to sell the ownership interest in a realty-owning entity may be accompanied by a notice of pendency pursuant to CPLR 6501. Because the terms of the statute and its history do not support plaintiff's claimed right to this provisional remedy, this court must reverse the decisions below and order that plaintiff's notice of pendency be canceled."]; Yonaty v Glauber, 40 AD3d 1193, 1194-1195 [3d Dept 2007] ["A review of plaintiff's consolidated complaint demonstrates that plaintiff's action does not directly affect title to or possession of real property within the intendment of CPLR 6501. Examining the complaint in its entirety, it is clear from plaintiff's allegation seeking to impose a constructive trust that his true action is to enforce defendants' promise to give him a 20% interest in the LLC which acquired the O'Neil Building, not an ownership interest in that real property itself . . . here, while plaintiff seeks imposition of a constructive trust on real property (i.e., the O'Neil Building), as well as other relief related to the property, plaintiff never asserts an interest in the real property itself but, rather, claims only an interest in the LLC which acquired the real property. Thus, notwithstanding the labels assigned to plaintiff's causes of action and the relief sought, and without any consideration of the underlying merits of his claims, we agree that plaintiff's pleadings fall outside the scope of CPLR 6501 and do not support the notices of pendency" (internal citations and quotation marks omitted).]; Liffiton v DiBlasi, 170 AD2d 994, 995 [4th Dept 1991] ["Since plaintiff's claimed interest in the partnership is, under the Partnership Law, an interest in personal property), a lis pendens is not appropriate" (internal citations omitted).]; Felske v Bernstein, 173 AD2d 677, 678 [2d Dept 1991] ["At bar, even if the defendants were granted specific performance in the underlying action, that fact alone would not give them an interest in the subject realty because the defendants' interest in the joint venture would be an interest in personal property, not an interest in the realty."]; McKernan v Doniger, 161 AD2d 1159, 1159 [4th Dept 1990] [Motion to cancel notice of pendency granted because "[p]laintiff's interest in the partnership is an interest in personal property, not an interest in the real property owned by the partnership. Thus, a judgment declaring plaintiff's rights under the partnership agreement would not directly affect the title to, or the possession, use or enjoyment of, real property" (internal citations omitted).]; Gen. Prop. Corp. v Diamond, 29 AD2d 173, 175 [1st Dept 1968] [Action seeking declaration that a joint venture existed and a breach thereof did not seek interest in real property and thus motion to cancel notice of pendency was granted.]).

Indeed, when the cause of action clearly does not directly affect title to, or the possession, use or enjoyment of the defendant's real property, the notice of pendency ought to be canceled (Interior Design Force Inc. v Dorfman, 151 AD2d 461, 462 [2d Dept 1989] ["We agree with the Supreme Court that the appellant's complaint in essence seeks damages for breach of the contract. Accordingly, since the appellant's lawsuit does not directly affect title to, or the possession, use or enjoymentof the respondents' real property."]; Alternate Energy Mgt. Corp. v Fontana, 141 AD2d 482, 482 [2d Dept 1988][Notice of pendcy canceled in an action "inter alia, to recover damages based upon the defendants' allegedly wrongful possession of certain solar energy equipment."]).
As the court in 5303 Realty Corp. noted when properly used, a notice of pendency is one where the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property and not in cases where the plaintiff "more or less refer[s] to real property, but which [do] not necessarily seek to directly affect title to or possession of the land" (id. at 321). Thus, in 5303 Realty Corp., an action whereby rather than an agreement to convey real property, the parties agreed to convey the property by conveying ownership of the corporate stock of the corporation that owned said property, when the sale of the stock was never consummated, plaintiff sued seeking to enforce the agreement and also filed a notice of pendency asserting that that the agreement was one to sell the fee ownership in the property (id. at 316-317). Defendants moved to cancel the notice of pendency and the court granted the application, noting that "in the present action, plaintiff cannot have the advantage of a notice of pendency" (id. at 323). Notably, [*6]the court held that "[a]lthough the prayer for relief seeks a transfer of title, the court must examine the complaint in its entirety. It is apparent from the allegations that the true action is to enforce a contract to sell stock" (id. at 323). 
Similarly, in Mckernan, an action where plaintiff, a partner in a partnership, sued defendant, the other partner to prevent the sale of real property owned by the partnership to third party, defendant moved to cancel the notice of pendency filed by plaintiff and the court granted defendant's motion to cancel the same noting that "[a] lis pendens is not appropriate in such action. In his declaratory judgment action plaintiff does not seek dissolution of the partnership or partition of the partnership assets. Plaintiff's interest in the partnership is an interest in personal property, not an interest in the real property owned by the partnership" (id. at 1159 (internal citations omitted).]). 
By contrast, in Moeller v Wolkenberg (67 AD 487 [1st Dept 1902]), an action where plaintiff sued for damage caused to her property by defendant's construction on his adjoining property, the court denied defendant's application seeking to cancel the notice of pendecy filed by plaintiff against defendant's property (id. at 489-490). The court noted that because plaintiff sought an injunction compelling defendant to remove the injurious additions to defendant's property, it denied the application to cancel the notice of pendency stating that the action filed by plaintiff
is intended to restrict the use which the defendant has made and is making of her property and of the party wall, the plaintiff who claims an interest therein alleging that he has been damaged thereby and is entitled to have the use and enjoyment of defendant's land restricted and limited to what they were before she commenced to build the new structure. The Code does not require that the right asserted should be as extensive as the title claimed by the defendant; nor is it indeed necessary that the title itself should be directly involved. It is sufficient if the right asserted by the plaintiff is of a character that could affect 'the possession, use or enjoyment' of the property, and the action is one wherein the judgment asked would be binding not only upon the defendant, but upon her successors in title as well. In such an action — which in substance is one in rem — the object of the lis pendens is to retain the subject-matter within the power of the court until the judgment is entered, since otherwise, by successive alienations, such judgment or decree would be rendered ineffectual
(id. at 489-490).

Discussion

Moving defendants' application seeking to cancel the notice of pendency is denied. Significantly, although the amended complaint seeks a myriad of relief, much of it seeking to enforce Van Courtland's Operating Agreement - such that the action is one seeking to enforce plaintiff's ownership interest in Van Courtland - the action is also one which seeks to enforce a provision in the Operating Agreement which grants plaintiff the right to purchase the properties. Thus, the action does, in fact, plead a cause of action where the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property.
As noted above, pursuant CPLR § 6501, in an action where a judgment "would affect the title to, or the possession, use or enjoyment of, real property", "[a] notice of pendency may be filed." When reviewing an application seeking to cancel the notice of pendency on grounds that the action does not fall within the ambit of CPLR § 6501 and, thus, the notice of pendency is improper, the court's scope of review is circumscribed, limited to the face of pleadings, such that the court may not consider whether the action has merit (5303 Realty Corp. at 320-321).
Indeed, when the cause of action clearly does not directly affect title to, or the possession, use or enjoyment of the defendant's real property, the notice of pendency ought to be canceled (Interior Design Force Inc. at 462; Alternate Energy Mgt. Corp. at 482). When, however, "the right asserted by the plaintiff is of a character that could affect the possession, use or enjoyment of the property, and the action is one wherein the judgment asked would be binding [*7]not only upon the defendant, but upon her successors in title as well," the notice of pendency should stand (Moeller at 489).
As relevant, here, it is well settled that ownership in corporate shares is distinct from the corporation's ownership of real property, a transfer of the former not effectuating the transfer of the latter (5303 Realty Corp. at 323; Brock at 401). Because in such an action, the judgment demanded would not affect the title to, or the possession, use or enjoyment of, real property, a notice of pendency is inappropriate were the object of the litigation is the plaintiff's actual or prospective property interest in the shares of the corporation, limited liability company or partnership (5303 Realty Corp. at 317; Yonaty at 1194-1195; Liffiton at 995; Felske at 678; McKernan at 1159; Gen. Prop. Corp. at 175).
Contrary to moving defendants' contention, given the allegations in the amended complaint, wherein it is alleged that plaintiff has a right of first refusal to purchase the properties, she has a potential interest in more than her interest in her membership shares in Van Courtland. Indeed, her causes of action could, if she succeeds, give rise to a judgment giving her an ownership interest in the properties.
To be sure, it is true that the amended complaint interposes causes of action largely premised on plaintiff's rights as owner of 30% of Van Courtland's membership, which rights are governed by the Operating Agreement. Ordinarily, these claims without more, are not tantamount to plaintiff having an ownership interest in real property such as the properties at issue here, owned by Van Courtland.
However, a review of the amended complaint also evinces that it alleges that pursuant to Van Courtland's Operating Agreement Section 6 requires, inter alia, that if the properties are sought to be sold, members holding the majority of Van Courtland's shares must notify all other members of the intent to sell the properties in writing, and if all members cannot agree on a sale price, it requires the retention of an appraiser, and upon determination of the value of the properties, any member other than those desiring to sell the properties must be given an opportunity to purchase the properties.
Thus, here, one of the objects of this action is a judgment nullifying the agreement to sell the properties to Gojcaj because prior to Gojcaj's agreement to purchase the properties, in contravention of the Operating Agreement, plaintiff, as Van Courtland's member not desiring to sell the properties, was never given an opportunity to purchase the property. If plaintiff is successful in this action and moving defendants are forced to abide by the Operating Agreement, the amended complaint establishes that plaintiff would be given an opportunity to purchase the properties. As such, this action does, in fact, plead a cause of action where the judgment demanded would affect plaintiff's potential title to, or the possession, use or enjoyment of, real property (cf. Mckernan). 
In addition to the foregoing, the assertions in the amended complaint and the judgment sought would also affect Van Courtland's ownership interest in the properties, which, therefore, warrants denial of this motion (Moeller at 489 [Court denied motion to cancel notice of pendency where action sought to enjoin defendant from engaging in construction and further sought to compel defendant to alter his property to its pre-action condition. Thus, the Court held that the action filed by plaintiff "is intended to restrict the use which the defendant has made and is making of her property and of the party wall, the plaintiff who claims an interest therein alleging that he has been damaged thereby and is entitled to have the use and enjoyment of defendant's land restricted and limited to what they were before she commenced to build the new structure. The Code does not require that the right asserted should be as extensive as the title claimed by the defendant; nor is it indeed necessary that the title itself should be directly involved. It is sufficient if the right asserted by the plaintiff is of a character that could affect 'the possession, use or enjoyment' of the property, and the action is one wherein the judgment asked would be binding not only upon the defendant, but upon her successors in title as well. In such an action — which in substance is one in rem — the object of the lis pendens is to retain the subject-matter within the power of the court until the judgment is entered, since otherwise, by [*8]successive alienations, such judgment or decree would be rendered ineffectual."]). Accordingly, the instant motion is denied. It is hereby
ORDERED that plaintiff serve a copy of this Decision and Order with Notice of Entry upon plaintiff within thirty (30) days hereof.
This constitutes this Court's decision and Order.
Dated: 1/12/26HON. FIDEL E. GOMEZ, JSC

Footnotes

Footnote 1: This Court's Part Rules state that this Court's Part Rules, which, inter alia, state that
[c]ourtesy hard copies of all motion papers, including opposition and reply papers ("Working Copies"), shall be submitted to Chambers by mail, with proof of e-filing, no later than the return date of the motion. Working Copies of exhibits are not necessary. E-filed motions that are submitted without Working Copies shall be denied without prejudice
(Part 32 - Commercial Division Rules at Section VI[B], which can be found 
at 
https://www.nycourts.gov/LegacyPDFS/COURTS/ comdiv/bronx/Judge%20Gomez's%20Part%20Rules.pdf). Here, while the Court received working copies of movants' motion papers it did not receive plaintiff's papers in opposition.